rules. We have traffic lights, which you can see on the podium there. The yellow light means you have two minutes left in your argument. When the red light comes on, we ask you to conclude as quickly as possible, unless you're answering a question from the court. And the second point is that we will have read your briefs and record excerpts, but may not be First case of the morning is number 16, 31229 Walker v. City of New Orleans. Mr. Bissell. Good morning, Your Honors. Regal Bissell for the Plaintiff Appellant, Wayne Walker, the Administrator of the Successions of Ornette Calhoun Spells Jr. and Sr. Your Honor, last July I asked for a panel re-hearing of this court pertaining to the district court's dismissal of our 1983 action for lack of standing. After filing the petition, this court withdrew its original opinion and my petition for re-hearing and scheduled these arguments. And believe but I'm going to try to cut to the chase and get to the issues that I believe are important. I believe the crux of the issue in this case is the applicability of survival and wrongful death statutes as it relates to standing. In reaching its opinion, the court stated first the general rule that to bring a 1983 case or claim, the courts looked to Section 1988 for guidance and Section 1988 says look to state common law if the federal law isn't sufficient. But the court also stated that thus, in order to have standing, the plaintiff has to have standing under Louisiana's wrongful death and survival statutes. That is, I think, where the court erred. I think that decision is too narrow. I think it resulted from the court's reliance on the decision in Pluitt v. Frazier, which the court cited. Pluitt was a survival case and I believe that's why the court stated in its case that they must look to the survival and wrongful death statutes. While the applicability of such statutes was correct for Pluitt, I don't believe it's correct in this case because this case is not a wrongful death or survival case. What I'm saying is there are state wrongful death, there are statutes other than state survival and wrongful death statutes that apply as state common law when someone is representing someone else in a 1983 claim. Do you have any case analogous to this about the rights of the succession to go after property? I'm sorry? Don't you have any case law or analogous to this about the rights of the succession to go after property? I have statutes. For example, if a minor child has a 1983 claim, the proper party to bring such a claim would be Louisiana's tutorship, would be the minor child's tutor under the Code of Civil Procedure, Article 4262. Likewise, if an interdict has a 1983 claim, his curator would bring the claim under Civil Procedure, Article 4566. We think under Civil Procedure, Article 685, in this case, the succession representative is the proper party to bring this claim. In stating that, I think it's important to stress whose right of action is being asserted in this case. We are not asserting a cause of action of any of the decedents, either one of them. This is a cause of action of the succession itself that is being brought by the succession representative. In fact, the very wording of Louisiana's wrongful death and survival death statutes, I believe, makes it very clear that they are inapplicable. The survival and wrongful death statutes apply when a — an offense or injury is suffered by a person who then dies. The events resulting in this case occurred in 2014. Both of the decedents had died. And in fact, well, let me — I think part of the confusion rests in this fiction we call a succession in Louisiana law. We have a doctrine of season established by Articles 934 and 935 of the Civil Code, which prohibits any gap in ownership. So when someone dies, their estate is immediately transmitted to the heirs. But we're also a public records State, and record owners are the ones who are recorded in the conveyance records. So — The transfer occurs by operation of law, so — It occurs by operation of law, and so the heirs are the owners of the property so — immediately so that there's no gap in ownership. However, you need a judgment of possession in order to confirm this. It's important that the judgment of possession doesn't only transmit property to the heirs. It also recognizes who the heirs are. There can be objections to heirship. There can be cases where a will is found and they are legates instead of heirs. You can have unknown relatives pop up. The judgment of possession is the document, is the ruling of the Court, which officially pronounces these are the correct heirs, and so they inherit. But until that judgment of possession is rendered and recorded, we have this fictional succession, which is an administration of the State, and you can look at it as a corporation. The succession representative is like the CEO of the corporation. He is in charge of all of the property. He is deemed to possess all of the property under Louisiana law, and he is the party who brings any action. It was — in fact, when I first filed this suit, we didn't even have a succession open. I immediately filed it on behalf of the heirs but realized we have to have a succession because these people have to become record owners in order to enjoy rights of ownership. The succession was opened and the succession representative was substituted for the presumptive heirs. I think Louisiana law is clear. The Code of Procedure Article 3211 provides a succession representative shall be deemed to have possession of all property of the succession and shall enforce obligations in its favor. In addition to that, Code of Civil Procedure Article 685 provides, except as otherwise provided by law, the succession representative appointed by a court of this State is the proper party plaintiff to sue to enforce a right of the deceased or his succession while the latter is under administration. The heirs or legacies of the deceased, whether present or represented in the State or not, need not be joined as parties whether the action is personal, real, or mixed. Well, let's, um, we, we, you've cited the statutes to us. What is the defect in the notice that the City gave? Because the City, I don't think the City was required to look into the death records. I think they were, Your Honor. I think Mennonite requires that you, well, first of all, there's, and I don't have the case at hand, but there is Louisiana case law cited in my brief in which reliance on, on the assessor's records is not sufficient to satisfy Mennonite. In fact, the assessor's records are not ownership records. The conveyance records are ownership records. Conveyance, the assessor's roles are simply a list of the people to whom a tax bill is sent. Right. It is notoriously out of date. Judge Feldman, in his original opinion, seemed to think the City was, was blameless because they followed their ordinance. But the City has no right to enact an ordinance and use that ordinance to skirt the provisions of the Federal Constitution. Article, article, you know, the Federal Constitution makes it very clear private property shall not be taken without due process of law. Well, clearly you can't require the tax assessor or the demolition, you know, committee to, well, maybe, maybe you can make different requirements for demolition committee than the tax assessor. But you can't require them to do a complete succession review every time. I mean, it's fortunate here that there is a limited number of heirs. Sometimes there are going to be a couple dozen, right? Your Honor, I think they have to make a legitimate attempt to find the proper heir. Their ordinance not only gives them the right to rely solely on the assessor's roles, the ordinance even has the audacity to state that if the certified letter to the, to the record — well, not the record owner, but to the owner on the — listed on the assessor's roles comes back unclaimed, it's deemed that whoever it was supposed to be sent to and received admits all of the allegations of the city's claims. It's a complete denial of due process and a complete violation of the Mennonite requirements for taking a property. How did your clients find out about this notice? Sometime after the original judgments of this administrative proceedings took effect, the city issued an order of demolition for the property, and it was posted on the property, and the heirs, one of the heirs, or perhaps a friend of the heirs, happened to tell them that the notice had been posted, and they contacted me. I investigated and determined what had — what had occurred, how it was placed there, found out they had received no knowledge whatsoever. Had anyone been living there at the time? I'm sorry? Had anyone been living there at the time? At the time the demolition notice was posted, it is my information that nobody lived there. There had been people living there, but at the time of the actual demolition notice, it was vacant at that point. And in fact, to show you how absurd this — the city itself declared this property uninhabitable, posted notices that it was to be demolished, yet that is the address they sent this notice, the original notice of the proceeding. Now, how could they expect anybody to know about this administrative proceeding when they sent their notice to a house that they had condemned they knew was vacant? The whole ordinance to me is just so — The notice was actually returned to them. I'm sorry, Your Honor? And that notice was actually returned to the city, wasn't it? I mean, so they knew it was undeliverable. As far as I'm concerned, absolutely. They knew it was undeliverable. They had inspected the property. They had slated it for demolition. And maybe I misunderstand the record. I thought they actually received that notice back from the post office marked undeliverable. So when you say they knew, you're saying they knew the property — They learned — I thought they knew that the letter wasn't received because it was returned to them. Is that not in the record? Not that I'm aware of, Your Honor. All right. As far as I'm aware, my clients never learned of it. They never officially learned of it. They learned of it by word of mouth, by finding out the notices posted on the property itself. And we may be misunderstanding each other. I'm talking about what the city knew. Oh, the city, as far as I'm concerned — as far as I know, the city sent all of its notices to the address of the property on Barone Street, which was to be demolished and was uninhabited. What is the test for sufficient notice under due process? I'm sorry, Your Honor. I have hearing aids and I have a difficult — What is the test for sufficient notice under due process? I think under — I don't think there's any hard and fast rule, but I think Mennonite and the decisions thereunder make it clear that you have to make some honest, legitimate effort to determine the true owner. And you can't simply rely on — first of all, you can't rely on assessor's rules. And secondly, you certainly can't state that if you find out the message or your notice was not delivered, you can't — you can't say that that in itself constitutes admission of all of your allegations in your claims by the person you attempted to deliver the notice to. I think we have your argument, unless you've got something else to say. No, Your Honor, I don't have anything. Okay. Thank you. Thank you. Ms. Irvin? Good morning, Your Honor. May it please the Court, my name is Tanya Irvin. I'm a lawyer and I represent the appellee in this case, the City of New Orleans. The issue before this Court is whether a succession administrator has standing to bring a 1983 claim for alleged deprivation of rights suffered directly by presumptive heirs. This Court has issued two affirmations of the District Court's determination that the succession administrator lacks standing. Those have been withdrawn. However, the Court should not stray from these prior decisions because Plewitt is controlling. This Court in Plewitt held that to have standing to bring a Section 1983 claim on behalf of another, a plaintiff must have standing under the state wrongful death or survival statutes. Now, while Plewitt — the Plewitt case did involve determining standing for wrongful death or survival action brought under Section 1983, the holding did not exclude its application to other actions such as the declaratory action that we have in this case that was also brought under 1983. However, if this Court is not inclined to follow Plewitt and instead fills the standing gap with the Louisiana Civil Code of Procedure Article 685, as suggested by the appellant, the case should still be dismissed for lack of standing because the due process right at issue does not belong to the deceased record owners or the deceased record owner's succession as contemplated in Article 685. It is the City's position that the right does not belong to the succession because civil rights are personal in nature and can only be brought by those suffering the injury and also because standing is determined at the time the complaint is filed, according to Plewitt, and when the complaint was filed in this matter, the successions were not under administration and consequently, an administrator had not been appointed. Louisiana Article 685 provides that while the succession is under administration, the court-appointed succession representative is the proper plaintiff in two instances. One is to enforce the right of the deceased and the other is to enforce the right of the deceased's succession. The appellant, in his original appellate brief on page 15, has admitted that the due process right at issue in this case does not belong to the deceased record owners. Thus, it follows that he's not attempting to enforce the rights of the decedent as contemplated under Article 685. So that leaves the second instance. Well, may I ask you a question then? If the decedent had died and your contention is only a live person has due process rights and the succession hadn't been appointed, then basically you're saying the City didn't have to give any notice at all. They could just go in and No, Your Honor. That's not what I'm saying. I'm saying that the Why not? Because there's no right. There can't be a violation. Well, as appellant argued, it appears that under Louisiana law that the heirs are put into possession by operation of law. So the presumptive heirs had the right at the time even though the succession was not under administration. What happened to the house? It has not been demolished, Your Honor. Still in the same situation? I believe it is. I believe it's been sold. I understood the suit to be to prevent a contemplated demolition. And I assume that that demolition didn't go forward while this case is pending. Correct. The demolition did not go forward and has not gone forward. Now that if this heirship has been established, you don't contest the fact that they're owners, do you? No, I don't contest the fact that the presumptive heirs are owners. I guess the question is whether this is a due process. They claim that they were earlier denied due process and got getting notice. But now they are established. They now have noticed you're back to ground zero. And now the issue should be whether or not the city can demolish the property. But you haven't gotten to that yet. Well, Your Honor, actually, I've spoken with code enforcement and the liens have been paid and the property has been sold twice. I'm sorry. The liens have been paid and the property has been sold twice. Since this matter was set for oral argument, the property has been sold once from the succession to an entity called Royal Ambassador. And again, about 30 days later, from Royal Ambassador to another entity. So this case is moot. I believe it is, Your Honor. Well, I'm trying to, I was puzzling what we're fighting about. They, what, I mean, the plaintiffs were entitled to wanted notice and they hadn't done what was necessary to get notice. Then they, then the, I could hardly be at the deprivation of due process at that juncture. Whatever was contemplated by the taking never occurred. They created the judgment of, of heirship, necessary recordation of true ownership, and then sold the property. I guess I don't really get, I'm just confused about what we're fighting over. I wish I could answer that question for you, Your Honor. The appellant in his original appellant brief on page 15 has admitted that the due process right of the decedent is not at issue. So we're, that leaves us with the second portion of Article 685, which is to enforce the right of the deceased succession. So we're trying to determine, is the presumptive is. What relief is sought? The relief that was sought in the complaint, Your Honor, was a declaratory judgment nullifying the entire administrative proceeding. Well, the demolition proceeding never occurred. Correct, Your Honor. So, I mean, what. I don't know what other relief. Sold the property. I just found that, I just don't understand what we're fighting about. Nor do I, Your Honor. I don't know what other relief he. It would have been nice if someone had sent us a memo about this. I, Your Honors, I just found out last week. Okay. That, that the. Okay, well, I'm just saying, for the future, you could tell us if, if you think a case has become moot. I mean, this is fine, but if it's moot, it's moot. But, for the record, Your Honor, Mr. Bissell is the attorney. Well, let me ask Mr. Bissell, is this case moot? No, Your Honor, not at all. I'll explain why it isn't. What, what relief do you seek? I'm sorry? What relief do you seek in this lawsuit? I'm, I'm sorry. I just can't. What relief do you seek in this lawsuit? Well, what happened is, as a result of this administrative proceeding, of which we had no notice, they assessed fines of. So? What's your injury? What is your injury? The injury are. Well, tip up the mic, if you would, please. The injuries are the, first of all, the approximately $24,000 in fines we had the, the succession had to pay. We, in fact, we had to liquidate the property in order to stop the fines and interest. At this administrative proceeding, they assessed initial fines of $9,000, but there was also additional fines every day that nothing was done. We contacted the city. They wouldn't let us repair the property. They said nothing could be done. It went into limbo, and the heirs had no funds. We eventually had to sell the property at a loss subject to their lien. The city had the property seized, went through a proceeding, had, had their lien for fines, et cetera, and the heirs have had to pay $24,000 in addition to selling the property at a distressed price. And. Is that in your, is that in your pleading? No. That has occurred since, that has occurred since the briefs were filed. The suit that's, the suit that's filed is moot. Now, I don't know how you come back at this juncture and say, well, we, we also want to. Well, Your Honor, what we're trying to recover is the fines that we think were wrongfully assessed and collected by the city. The city has taken $24,000 of my clients. I understand that, but that's not what you sued for. I read this thing. This whole thing is going forward, but, and you've done nothing but challenge the administrative notice, the due process rights, et cetera. And now, that's a very different lawsuit. Now you're, what you're saying is that, that the administrative process is here, calls these, that these assessments shouldn't have been made without notice. And that's your due process claim. Yes, Your Honor. But once, once the appeal was taken, we lost jurisdiction. We couldn't file any amendments or, or. Well, what about in the state court? When the, what's your relief in the, within the do you have the right to contest those, don't you? And is there some administrative process in the, in the state that allows you to review those, to, to challenge those assessments? We chose to challenge them in federal court because. You have to exhaust administrative remedies in the state court in the matters of takings under 1983. I think it would have been a useless gesture because the city of New Orleans. It would have been useless, but the law requires that the administrative remedies prerequisite to a constitutional claim under 1983 must be exhausted. There were no further administrative remedies available because by the time our clients learned of it, all of the appeal periods had lapsed. That's why we took, well, we filed a federal action for two reasons. First of all, because we think the constitutional rights were denied. And second, because the city doesn't pay state court judgments. The only judgment you can enforce against the city is a federal court judgment. It's a, it's a piece, if you get a state court judgment, it's a piece of paper. Well, this is a whole different appeal than the one that was briefed to us. Oh, yeah. I mean, you do, your brief does say reverse and remand for further proceedings. So I don't know whether this includes the damage claim that you're making now. I think, well, I think the important thing, Your Honor, was first to recognize we had to, we had to appeal the issue of standing in order to proceed. There have been some changes which will require some amendments to the pleadings, but we, we couldn't file anything. There was no jurisdiction in the district court once the appeal, once this court took over jurisdiction of the case. The claim you're describing is a quite different lawsuit, and it is a challenge to the, to the, to the city's imposition of administrative costs, whatever, the fines, whatever you're talking about. And I don't know about the Louisiana law on this, but I'll be very surprised if there's not some administrative process, and you personally concede you did, but you didn't, that, none of that's before us, but, but before you can go far with a 1983 suit, one of the immediate challenges of that, and an obvious challenge, is that you've got to exhaust those remedies. Patsy and those lines of cases which say that you don't have to exhaust administrative remedies, whatever, do not obtain in matters of takings, of, of unique takings under State law. Now. Well, I, I think, I think the actual lies, because the unconstitutional. Well, okay, what should we do with this law? What do you want us to do? What do you ask this court to do? We're asking this court to reverse Judge Feldman's decision as to standing, and acknowledge, at least agree that we do have standing, the succession representative is the proper party to bring this lawsuit. Well, standing to challenge the, the administrative processes and the demolition, which you no longer have standing to, no longer is an issue. Well, they challenge the fees. You won't challenge, you won't, you won't, you won't, it's a different, it's a different lawsuit. I mean, it's, nonetheless, well, I think we understand the difficulty of it. You're raising issues now that I, I wasn't aware were before the court. Well. Well, that puts us on a one ground. I mean, because of facts. I mean, I'm not prepared to address them fully. Neither are we. Okay. Ms. Irvin, what, why don't you tell us, I mean, you're basically, as I understood, I understood what you were starting to say, I think you're basically conceding that the succession could proceed with some kind of claim here. I'm saying that the heirs could, the presumptive heirs could. What's your best law for that? That the heirs could proceed? Yep. It's Louisiana law of succession. Do you have any case law where presumptive heirs are sued to enforce a claim on behalf of the succession? No, Your Honor, because it's the city's contention that it's not the succession's right. It's the actual heir's right. Well, I understand that, but normally, I mean, I'm a Texan, and I've recently been involved in probating two wills, and normally all the property rights go into the estate of the decedent, and it's up to the executor of the decedent to because, as he said, there may be disputes about who are the heirs or legatees. I understand, Your Honor. Isn't that the normal procedure here, no matter what you call it? Correct, Your Honor, but here, at the time that the alleged right was deprived, there was no administration of the succession going on. Do you have a single case that confirms what you're saying? No, I do not have any case law. All right. Well, let's assume, then, that they have standing. Then, given this new twist of events, why shouldn't we vacate and remand? By they, you mean the heirs? No, the succession. I mean, if we were to hold either, I mean, it would just be a matter of amending, and if we were to dismiss for lack of jurisdiction, that tolls limitations, I believe, and they probably could amend. So, why don't we just, either way, why don't we just remand it to the district court and you all fight it out? Because I believe that what he wants to put before the district court is a different case, which is to . . . Well, that's, frankly, I'd rather have the district judge fool with that than us. I understand, Your Honor. I mean, this . . . Yeah, I mean, this . . . I've had a couple of these New Orleans cases, and I know that the city really socks it to people with fines and fees and so on, and I know nothing about the local administrative remedies and whether they were exhausted and so on, but . . . Well, their remedies were not exhausted. They did not appeal the actual administrative judgment, but, of course, their argument is that they didn't have notice. They could have filed a nullity action in state court. Well . . . I think we ought to perhaps just let Judge Feldman deal with that. He's no stranger to Louisiana law, and I think he'll move very quickly with it. I understand, Your Honor. Do you want me to continue with my argument, or . . . I don't see any point on this, the due process, because that pertains to demolition. It doesn't pertain to where we are now, it seems to me. I understand. I'm not trying to deprive you of your opportunity, but if you want to . . . It's your pleasure, Your Honor. Well, that's very kind of you. We accept your offer. Thank you. Thank you. Smart move. All right, Mr. Bissell. We have nothing more to say. I mean, you have rebuttal. I don't think there's a lot more that I can say at this point. I would like to make the point, however, that the unconstitutional denial of due process isn't hinging solely on demolition of the property. The denial of due process was having this administrative proceeding take place without any notice to the defendant. Mr. Bissell, one of the basic principles is don't put the ball in the air when you're leading. What we're saying to you, we're sending it back to the district court to let you proceed. We're not dismissing the case outright, and if you want us to do that, we will. Oh, no. Well, all right. You're ahead, then I'll keep talking. Well, the other point I was going to make in response to a comment that was made is what else the city could have done. There are plenty of remedies under Louisiana law that the city could have taken. As one example, when they got the letter back from the ---- We're not going to rule on that issue, Mr. Bissell. That's irrelevant. In the present status of the case, we believe that is irrelevant. Judge Feldman will have to look at it again. Unless you have further questions. None. Okay. Thank you. Thank you.